The CITY OF LOUISIANA,
Plaintiff/Respondent,

v.

Don BRANHAM and Rhonda Branham,
Defendants/Appellants.

No. 72584.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 9, 1998.

John T. Bruere, St. Peters, for appellant.

Joseph A. Brannon, Schaper and Fisher, Bowling Green, for respondent.

RICHARD B. TEITELMAN, Judge.

Defendants Don Branham and Rhonda Branham purchased several adjoining lots within the City of Louisiana, Missouri with the intent to place a mobile home on each lot. Thereafter the City ordered Defendants to stop work on the lots, claiming that the development would constitute a "mobile home park" in violation of applicable City ordinances and zoning regulations. When Defendants later proceeded to place a mobile home on one of their lots, the City filed this action for an injunction and also for declaratory judgment to determine upon which, if any, of their six lots Defendants could lawfully place mobile homes. Defendants appeal the trial court's judgment which held that they were entitled to place a mobile home on only one of their six lots. Defendants contend the judgment was based upon a zoning ordinance amendment which was invalidly enacted and thus unenforceable. We agree. Reversed.

Defendants purchased their property on July 29, 1992. The real estate consisted of Lot 8 of Block 4, and Lots 3 through 8 of Block 3, in the Bank of Louisiana Subdivision, a Subdivision which has been platted since 1917 and accepted and approved by the City of Louisiana. Defendants purchased these seven lots with the intention of placing mobile homes on two of the lots to use as permanent dwelling places for themselves and some of their relatives, and to purchase mobile homes for the remaining lots and rent them out. The lots are located in an area that runs along the railroad tracks and lies within a district that was at the time of purchase and has remained throughout the course of this litigation zoned "R–2, Mobile Home Dwelling District".

Ordinance No. 6266 (LO 6266) is the general zoning ordinance for the City of Louisiana. It sets forth the zoning rules and definitions, establishes the different zoning districts within the City, and provides for the various specific uses which are allowed and not allowed within each of those respective zoning districts. Business and industrial districts are zoned as either B–1, B–2, I–1 or I–2. Residential districts are zoned either R–1, which allows buildings and homes for dwelling purposes, or R–2, which is actually denominated "mobile home dwelling district" and which allows buildings, homes or "mobile homes for dwelling purposes." At the same time, however, LO 6266 also expressly prohibits within R–2 districts "any use as allowed in B–1, B–2,

I–1 or I–2 districts." And one of the specific enumerated uses allowed in B–2 districts is "mobile home parks, for dwelling purposes."

By its terms LO 6266 thus prohibits the existence of **mobile home parks** within an R–2 district, even while at the same time providing that it is permissible to place mobile homes for dwelling purposes on **individual lots** within such a district. LO 6266 does not provide definition for the term "mobile home park."

On July 11, 1994, Defendants applied for a City permit for the installation of sewer and water lines to serve seven mobile homes to be placed upon their seven lots. This application was initially approved and a permit issued on July 12, 1994. Defendants then commenced installing the sewer and water lines. On July 28, 1994, after Defendants had completed approximately 90% of the installation work, the Mayor of the City of Louisiana issued a stop work order. Later, Defendants were allowed to complete the installation of these systems, at a cost to them of approximately $10,000.

At approximately the same time when installation work first began on the sewer and water lines Defendants also moved a mobile home onto Lot 3, Block 3. Defendants had applied for a permit to do so and expected that the permit would be granted but it was at first denied. On September 9, 1994, Defendants sold Lot 3 of Block 3 to Mr. and Mrs. Wayne Hill, leaving Defendants with six of their original seven lots. Mrs. Hill is Defendant Rhonda Branham's mother. The City eventually issued a permit for a mobile home on Lot 3; and both parties to this action have stipulated that the Hills lawfully reside in a mobile home on that lot.

On November 14, 1994, the City Council enacted Ordinance No. 6478 (LO 6478). That ordinance, which states on its face that it is applicable to "all sections of the Louisiana Code of Ordinances," defines the term "Mobile Home–Trailer Park." It defines that term as: "One or more adjoining lots used or intended to be used, let, leased, rented or sold for the siting of two or more manufac-

tured houses, manufactured homes, mobile homes or trailers for residential use." Prior to LO 6478's enactment no public hearing was held in relation thereto, by either the City Council or the City's Planning and Zoning Commission.

On March 16, 1995, Defendants applied to the City for a building permit to place a mobile home on Lot 8, Block 4. On March 21, 1995, the City denied the requested permit. Defendants subsequently appealed that decision to the City's Board of Adjustment. The Board refused to render any ruling in the appeal. Defendants had also appealed to the Board of Adjustment once previously, regarding the City's initial denial of a permit to place a mobile home on Lot 3 of Block 3, and the Board likewise declined to make a ruling on that occasion as well. The parties have stipulated that Defendants have exhausted all administrative remedies available to them with respect to the matters at issue in this litigation.

On July 1, 1995, Defendants placed a double-wide mobile home on Lots 4 and 5 of Block 3, without seeking a building permit to do so. Defendants maintained that no permit was required because the mobile home was placed there only for storage rather than for dwelling purposes.[1]

The City disagreed. On August 3, 1995, the City filed an action for declaratory judgment and injunctive relief against Defendants. In its petition the City requested a judgment "declaring [Defendants] to either be in violation of or compliance with the zoning ordinances of the City of Louisiana" regarding their placement of a mobile home on Lots 4 and 5 of Block 3, and alleged that such placement violated the provisions of LO 6266 which prohibited "mobile home parks" within any R–2 Mobile Home Dwelling District. The petition sought injunctive relief to prevent Defendants from placing a mobile home on Lots 4 and 5 of Block 3, and further enjoining them from placing mobile homes "on any adjoining lots to which the [Defendants] have an interest which would also

---

1. The record indicates that by agreement of the parties this particular mobile home remains

"stored" on Lots 4 and 5 of Block 3, unoccupied, pending the outcome of this appeal.

violate the zoning ordinances of the City of Louisiana."

Defendants filed an Answer and Counterclaim, in which they sought a judgment that they were legally entitled to place mobile homes for dwelling purposes upon all six of their remaining lots, and injunctive relief mandating that the City allow them to do so. Defendants' counterclaim also sought a ruling that they were lawfully entitled under city ordinances to place there indefinitely "for storage purposes only" the mobile home located on Lots 4 and 5 of Block 3, without a permit, "just as they would have the right to store building materials on a dwelling lot. . . ."

The cause was heard in a non-jury trial held on May 13, 1996. Both parties stated on the record that they were seeking a judicial determination as to which, if any, of Defendants' remaining six lots Defendants could lawfully place a mobile home upon to rent or sell for residential use.

On June 21, 1996, several landowners who owned property nearby Defendants' six lots filed a motion for leave to file an Amicus Curiae brief with the trial court, along with a copy of the proposed brief. Defendants objected to the proposed Amicus brief on the ground that its statement of facts as well as some of its attached "exhibits" contained matters of alleged fact outside the record after evidence in the case had been closed, and that Defendants would not have an opportunity to rebut or cross-examine such alleged new "evidence". On September 20, 1996, the trial court entered an order granting leave for the Amicus Curiae brief to be filed and considered by the court solely for purposes of the legal issues discussed therein, specifically stating in the order that the court "disregards any evidence of fact contained in the Amicus Curiae Brief not presented at the original hearing."

On March 10, 1997, the trial court entered the following order in the case:

Comes now the Court and upon due consideration finds for Plaintiff on its Petition for Declaratory Judgment. The Defendant is hereby ordered enjoined from placing a mobile home on Lot 8 of Block 4 in the Bank of Louisiana Subdivision.

Furthermore, the Defendant is ordered enjoined from placing a mobile home on Lots 8, 7, 4 of Block 3 in the Bank of Louisiana Subdivision and may place a mobile home on either Lot 5 or Lot 6 of Block 3 in the Bank of Louisiana Sub-division. On Defendants' Counterclaim for Declaratory Judgment the Court finds for the Plaintiff and further prohibits Defendant from storing a mobile home or portion thereof on lots in question not in conformance with the above orders. Costs are taxed to the Defendants. Counsel to be notified.

On March 20, 1997, Defendants filed their "Motion For A New Trial Or In The Alternative To Amend Order." This motion requested that the court order a new trial to allow Defendants to offer evidence countering the statements and exhibits contained in the Amicus Curiae brief which were not part of the evidentiary record at trial. In the alternative, it requested that the court amend its order of March 10, 1997 by denominating it as a "Judgment," and further amend the order by including within it findings of fact and conclusions of law.

On April 14, 1997, the court denied Defendants' request for new trial and for findings of fact and conclusions of law. On that same date the court entered a final order in the case denominated "Judgment" which repeated the provisions contained in its order of March 10, 1997. Defendants appeal from that judgment.

Defendants raise four points in their appeal. Defendants contend (1) that the trial court erred in not allowing them to place a mobile home on each of their six lots because LO 6478, defining "mobile home trailer park," was not enacted in compliance with the procedure required by the state Zoning Enabling Act and therefore is invalid and unenforceable; (2) that even if LO 6478 is valid, Defendants had established a "nonconforming use" prior to its enactment and therefore should be exempt from its zoning restrictions under the "grandfathering" doctrine; (3) that the trial court erred in not allowing Defendants to place a mobile home on each of their six lots because the application of city ordinances to prevent such use

causes an unconstitutionally unreasonable result by arbitrarily restricting Defendants' use of their land; and (4) that the trial court erred in allowing the Amicus Curiae brief to be filed after the close of all evidence when that brief contained alleged new "evidence" and exhibits not presented at trial and Defendants were denied any opportunity to rebut or cross-examine such alleged new evidence.

We regard the first issue as dispositive, and hence decline to address the merits of the other three points raised on appeal.

LO 6478 was enacted by the Louisiana City Council on November 14, 1994 and defines "Mobile Home Trailer Park". Defendants contend that ordinance is invalid because it was not enacted in compliance with the notice and public hearing requirements of Section 89.060 RSMo 1994,[2] the statute authorizing a municipal legislative body to change zoning laws. That statute states, in relevant part:

> Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed. * * * * The provisions of Section 89.050 relative to public hearing and official notice shall apply equally to all changes or amendments.

Section 89.050 RSMo, which authorizes a municipal legislative body to enact zoning laws, states in pertinent part:

> However, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days notice of the time and place of such hearing shall be published in an official newspaper or a paper of general circulation in such municipality.

■ Missouri courts have long held that our state's Zoning Enabling Act, Sections 89.010 through 89.140 RSMo, is the sole source of power and measure of authority for cities, towns and villages in zoning matters. *City of Moline Acres v. Heidbreder*, 367 S.W.2d 568, 572 (Mo.1963). Zoning ordinances constitute an exercise of the state's police power. *Dahman v. City of Ballwin*, 483 S.W.2d 605, 608 (Mo.App. St. Louis 1972). As such, a city has no inherent police power to zone, but rather must look to the Enabling Act to determine the extent of such power delegated to it by the state. *Allen v. Coffel*, 488 S.W.2d 671, 678 (Mo.App.K.C. 1972). Any valid exercise of such delegated powers must conform to the terms of the statutory grant. *Id.* Enactment of a zoning ordinance **or the amendment** of an existing ordinance must, therefore, strictly comply with the statutorily prescribed notice and hearing requirements of 89.050 and 89.060 RSMo. *Dahman* at 608; *City of Monett v. Buchanan*, 411 S.W.2d 108, 113 (Mo.1967); 101A C.J.S. Zoning & Planning, Section 84, p. 315. Where the procedural requirements of the Enabling Act are not strictly complied with, the ordinance passed is invalid and cannot be enforced. *State ex rel. Casey's General Stores, Inc. v. City of Louisiana*, 734 S.W.2d 890, 895 (Mo.App. E.D.1987).

■ It is undisputed in this case that no prior public hearings were held in relation to LO 6478, by either Louisiana's City Council or its Zoning Commission. Thus, if LO 6478 is properly considered an amendment to the City's general zoning ordinance, then it is invalid and unenforceable since its enactment failed to comply with the notice and hearing requirements of Section 89.060 RSMo.

The City contends that LO 6478 is not a zoning ordinance amendment but is instead a "general definitional" ordinance which, on its face, is intended to apply not merely to the City's zoning ordinance but rather to all sections of the Louisiana Code of Ordinances.[3] Therefore, the City argues, since LO 6478 is not a zoning ordinance and thus not subject

---

2. All statutory references are to RSMo 1994 unless otherwise noted.

3. The City also argues that Defendants are not entitled to assert on appeal their claim that LO 6478 is invalid, because that claim was not raised in Defendants' post-trial motion and thus not preserved for appellate review. This argument is without merit. Defendants presented their claim regarding the invalidity of LO 6478 to the trial court both on their pleadings and during trial. They were not required to reiterate that claim in a post-trial motion in order to preserve it for review. Rule 73.01(b).

to 89.060 RSMo's notice and hearing requirements, it is valid and enforceable.

We disagree.

The only substantive content of LO 6478 is its creation of a definition of the term "mobile home trailer park". That definition states:

> One or more adjoining lots used or intended to be used, let, leased, rented or sold for the siting of two or more manufactured houses, manufactured homes, mobile homes or trailers for residential use.

Because the City's general zoning ordinance, LO 6266, contains no definition of the term "mobile home park," and because the provisions of LO 6266 that prohibit any "mobile home park" within an R–2 zoned district would be difficult (if not impossible) to enforce absent a working definition of that term, it necessarily follows that LO 6478 would, if held to be valid and applicable, effectively result in a very significant and substantive change to the city's zoning regulations affecting R–2 Mobile Home Dwelling Districts. Yet the City has offered no authority, nor have we found any, to support its contention that LO 6478 should not be considered to be a substantive modification of the City's general zoning ordinance merely for the reason that the definition contained in LO 6478 might also apply to certain other – and unspecified—parts of the City's Code of Ordinances.

There are no Missouri cases directly on point concerning this issue. Some authorities from other states suggest that an ordinance like LO 6478 might be deemed not to be a zoning ordinance. See *Town of Clearfield v. Cushman,* 150 Wis.2d 10, 440 N.W.2d 777, 780–81 (1989); *Merlino Enterprises, Inc. v. Fenlon,* 112 R.I. 653, 314 A.2d 155, 156 (1974). We believe the better-reasoned authority, however, is to the contrary. An ordinance change which effectively disallows a mobile home park where one would have been allowed before must be considered a zoning law change, because labels should not prevail over substance. *Whidden v. Faigen,*

255 Ga. 347, 338 S.E.2d 264, 265 (1986). LO 6478 "necessarily modified" the City of Louisiana's zoning regulations affecting mobile homes and mobile home parks in a direct and substantive way, and therefore should be considered as a zoning amendment. See *Rayco Investment Corp. v. Board of Selectmen of Raynham,* 368 Mass. 385, 331 N.E.2d 910, 914–15 (1975). To hold otherwise would mean that the procedural protections and requirements of the state's Zoning Enabling Act could be circumvented by means of enacting a zoning law change but simply calling it something else. See *Id.* at 915.

For the foregoing reasons, we conclude that LO 6478 must be considered an amendment to the City of Louisiana's general zoning ordinance and therefore subject to the notice and hearing requirements of Section 89.060 RSMo. As such, LO 6478 was invalidly enacted and is unenforceable.

The City alternatively asserts that even if LO 6478 is invalid, the court still had to consider, interpret and apply LO 6266, the City's general zoning ordinance. Whether a proposed use as described in an application or in testimony at a hearing falls within a given category specified in a zoning ordinance is, after all, a question of law and statutory construction. Thus, the City argues, since the general zoning ordinance expressly prohibits "mobile home parks" within districts zoned R–2, and since "mobile home park" must mean something, the trial court could have reached the result that it did "solely" by interpreting that ordinance, without relying at all upon LO 6478.

We disagree.

LO 6266 purports to place a restriction upon "mobile home parks" within districts that are zoned R–2 Mobile Home Dwelling District; yet nowhere in that ordinance is the term "mobile home park" defined.[4] The absence of such a definition does not necessarily indicate, however, that the meaning of the term "mobile home park" is incapable of being statutorily construed. For although "there are few more difficult judicial tasks" than construing the meaning of an undefined term in a legislative zoning enactment, *Ha-*

---

4. For various definitions of "mobile home park", see 2 Anderson, American Law of Zoning, Section 14.04 (3 rd ed.1986).

sekamp v. Superior Equipment Company, Inc., 490 S.W.2d 385, 388 (Mo.App. St. Louis 1973), it can be done. See St. Louis County v. Pfitzner, 657 S.W.2d 262, 264 (Mo.App. E.D.1983) (construing the term "off-street parking area"); Coots v. J.A. Tobin Construction Co., 634 S.W.2d 249, 251–53 (Mo. App. W.D.1982) (construing the term "manufacturing"); Hasekamp at 388–89 (construing the term "contractor's plant or storage yard").

■ Here, under all of the circumstances and given the ambiguity of the ordinance's undefined term, we conclude that "mobile home park" within the meaning of LO 6266 cannot be construed to include the relatively small number of lots in question. One of the primary rules of construction in this state is that zoning ordinances, being in derogation of common law property rights, should, whenever ambiguous, be strictly construed in favor of the property owner. Cunningham v. Board of Aldermen of Overland, 691 S.W.2d 464, 469 (Mo.App. E.D. 1985); Coots, supra, at 251–252. Where a term in a zoning ordinance is susceptible of more than one interpretation, the courts are to give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes. Cunningham at 469; Coots at 252.

Finally, and most significantly, the record in this case leaves little doubt that the City would not have denied Defendants permits to place mobile homes upon their lots prior to the enactment of LO 6478. At trial City Superintendent David Yohn, whose responsibilities include reviewing all building permit applications for city zoning ordinance compliance, testified that for many years prior to LO 6478's enactment permission was routinely granted for landowners to place mobile homes on adjoining lots within the R–2 district. Mr. Yohn unequivocally stated that, prior to the enactment of LO 6478 in November of 1994, the City did not have an ordinance that it would have used to stop a person from putting up mobile homes in an

R–2 district on adjoining lots. It is sometimes held that the interpretation placed on a zoning ordinance by the authorities in charge of its enactment and application is entitled to great weight. Coots, supra, at 252. If so then here, where the record reflects that prior to the passage of LO 6478 the City would not have interpreted the provisions of its general zoning ordinance in such a way as to deny Defendants the right to place mobile homes on the six lots in question, the City cannot plausibly argue that the trial court should have adopted such an interpretation.

We hold that Defendants are entitled as a matter of law to place a mobile home for dwelling purposes on each of their six lots.[5] The trial court's judgment in favor of the City on its petition for declaratory and injunctive relief, and against the Defendants on their counterclaim for declaratory and injunctive relief, is reversed. Judgement is hereby entered in favor of Defendants on their counterclaim, and the City of Louisiana is ordered to issue to Defendants upon proper application the necessary building permits allowing them to place mobile homes on their lots.

CRAHAN, C.J. and ROBERT E. CRIST, Senior Judge, concur.

---

**5.** Defendants, however, are not entitled under existing ordinances to place an unoccupied mobile home on any of their six lots for storage purposes only. A mobile home is not akin to building materials. Defendants are entitled to place mobile homes on their lots for purposes of residential use and occupancy, or for a reasonable amount of time in preparation for such use and occupancy, but not simply for storage.